UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL JOHN ZEISZLER,

Plaintiff,

v.

DEPUTY JOHN MOODY, et al.,

Defendants.

Case No.  14-cv-04874-YGR (PR)

**ORDER OF PARTIAL DISMISSAL AND SERVICE**

## INTRODUCTION

Plaintiff, a state prisoner currently incarcerated at California State Prison - Solano, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983.  Dkt. 1.  Plaintiff has since filed an amended complaint, which is the operative complaint in this action.  Dkt. 6.  Plaintiff alleges violations of his constitutional rights against San Mateo County Sheriff's Department officials stemming from incidents of excessive force in 2014 (specifically on February 7, March 15, and March 16), and based on the conditions of his confinement at San Mateo County's Maguire Correctional Facility ("MCF").  *Id.* at 34-40.  Plaintiff claims that he has "attempted to file numerous grievances," to no avail.[1]  *Id.* at 6.  He seeks declaratory and injunctive relief as well as monetary damages.  *Id.* at 41.  Plaintiff filed a motion for leave to proceed *in forma pauperis*, which has been granted in a separate written order.  Venue is proper because the events giving rise to the claim are alleged to have occurred in San Mateo County, which is located in this judicial district.  *See* 28 U.S.C. § 1391(b).

## BACKGROUND

On February 7, 2014, Plaintiff claims that he arrived at MCF.  Dkt. 6 at 9.[2]  On that same date, Plaintiff was transferred to a "holding area for 'in-custody' court appearances" at the fourth

---

[1] It appears Plaintiff has not exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a).  If the allegations that his grievances have not been answered or were refused are true, however, it may be that administrative remedies are not "available" within the meaning of the statute.  This is an issue better resolved at a later stage of the case.

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Plaintiff.

United States District Court
Northern District of California

floor of the San Mateo County Superior Courthouse in Redwood City.  *Id.*  Defendants Deputies John Moody ("J. Moody") and Stephen Platt began to distribute paperwork to the inmates.  *Id.*  Plaintiff claims that he was "laying down and asleep" when he heard Defendant J. Moody call his name several times.  *Id.*  Plaintiff "used an explitive [sic] in response to [Defendant J. Moody's] inquiries."  *Id.*  Plaintiff claims that Defendant J. Moody approached him, and when Plaintiff opened his eyes, Defendant J. Moody struck him with a closed fist.  *Id.* at 10.  Plaintiff attempted to extend both arms to "defect [Defendant J. Moody's assault]" but Plaintiff "did not react in time and was struck with such force that the amount of blood from the wound immediately began to choke and drown [him]."  *Id.* at 10.  Plaintiff claims that Defendant J. Moody "proceeded to hold [him] down on his back as he was choking on blood."  *Id.*  Defendant J. Moody "struck [Plaintiff] again, striking his nose . . . ."  *Id.*  In order to avoid "further inhalation of blood" and "further brutality," Plaintiff attempted to sit up, but was restrained with force by Defendant J. Moody.  *Id.* at 10-11.  Plaintiff claims that Defendant Platt then "entered the holding cell and used excessive and unreasonable force" by "body slamming" Plaintiff and causing him to "bang his head on concrete."  *Id.* at 11.  Plaintiff claims that "his arms were restrained behind his back" and that he was handcuffed, but Defendants J. Moody and Platt "continued to abuse [him]" and to "shout orders that were unnecessary such as 'stop resisting' as they pulled [his] hair and used it to bash his head into the concrete."  *Id.* at 11-12.  Plaintiff was eventually placed in "a 'pro-straint' chair which is basical[l]y the back seat of a police car on wheels," where he was "clearly immobilized" with "a restraint bed with 2 straps . . . ankle restraints combined with handcuffs."  *Id.* at 12.  While in the pro-straint chair, Plaintiff claims that Defendant Correctional Officer Bleaker applied "unwarranted and unnecessary pressure points behind Plaintiff's jawline causing Plaintiff to scream out in agony."  *Id.*  Plaintiff also claims that Defendant Sergeant Peardon was present to videotape the incident, but Defendant Peardon did not intervene and allowed Defendant Bleaker to continue using force against Plaintiff.  *Id.* at 12, 15.  Plaintiff complains that no photographs were taken of his injuries.  *Id.* at 13.  Plaintiff claims that was taken to the San Mateo County General Hospital where he received "3 stiches to [his] lacerated lip."  *Id.*

On March 15, 2014, Plaintiff alleges that, he attempted to file a grievance based on the

United States District Court
Northern District of California

February 7, 2014 incident, but was prevented from doing so by Defendants Correctional Officers Calvin Echano and Adrian Alonso.  *Id.* at 16.  Plaintiff claims that Defendants Echano and Alonso took his grievance, threw it away, and then returned to his cell an hour later to assault him.  *Id.*

On March 16, 2014, Plaintiff claims that Defendants Echano and Alonso did not feed him breakfast.  *Id.*  When Plaintiff attempted to inform these Defendants of his need to eat breakfast due to a medical condition, Defendant Alonso allegedly told Plaintiff to "shut the fuck up" and then severed communications by muting the intercom in his cell.  *Id.* at 17.  After Plaintiff attempted to communicate with the officers and used an expletive of his own, Defendants Echano, Alonso, and another officer, Deputy Stacy Moody ("S. Moody"), came to his cell.  *Id.*  Plaintiff claims that after he was assaulted the day before, he "suspected he would suffer yet another assault," and he "apologized for his use of foul language towards Defendant Alonso."  *Id.* at 18.  Plaintiff claims that Defendant Echano, entered his cell saying, "You wanna talk shit," and "kicked [him] in the stomach."  *Id.* at 19.  Defendant Alonso and S. Moody "struck [him] in the head several times."  *Id.*  Plaintiff claims  that he was "jumped by all 3 defendants at once" and "[a]ll [he] could do [was] cover his head and lay down as he was assaulted from every conceivable angle from the top of his head, back of his head, ribs [and] upper and lower back."  *Id.*   While Plaintiff "place[d] both hands behind his back in complete surrender," Defendant Alonso struck him "once in each eye."  *Id.* at 20.  According to Plaintiff, his "eyes were swollen shut" and "8 months later, . . . [his] eyes still bear the dark circles of blunt force trauma."  *Id.* at 21.  Plaintiff claims that Defendant S. Moody then "called for an emergency response team to contain the incident."  *Id.*  Plaintiff adds that the "police report" (presumably about the March 16, 2014 incident) further indicated that Defendant Echano "placed Plaintiff in a choke-hold while a C/O Tapia and Defendant [S.] Moody both struck [him] several times in the face and body."[3]  *Id.* at 21.  Plaintiff was removed from his cell by Defendants S. Moody, Echano and Alonso and another correctional officer, "C/O Cody."  *Id.* at 22.  Plaintiff claims that "C/O Cody placed Plaintiff in a restraintive [sic] hold known as a pain control hold."[4]  *Id.* at 22.  After Plaintiff was "clearly

---

[3] Plaintiff does not list Correctional Officer Tapia as named Defendant in this action.
[4] Plaintiff does not list Correctional Officer Cody as named Defendant in this action.

restrained," Defendant Alonso placed [him] in "another carotid choke-hold which is considered lethal force attack" and whispered, "I will fucking kill you," into Plaintiff's ear as he choked him. *Id.* Plaintiff states that "Officer Cody ended the ass[a]ult." *Id.* Plaintiff claims he was made to "wait several h[ou]rs to get medical treatment." *Id.* When Plaintiff was seen by jail medical personnel, they suspected that he "suffered a broken bone in his right hand." *Id.* at 23. There was no video recording of the March 16, 2014 incident. *Id.*

Plaintiff claims that because of the aforementioned incidents of assault, he suffers "emotional distress, flashbacks, and nightmares." *Id.* at 24. He also alleges that he is "being held criminally liable to protect the interests of the San Mateo County Sheriff's Department . . . pursuant to *Heck vs. Humphrey*." *Id.* Finally, he fears "retaliation by members of the San Mateo County Sheriff's Department, the San Mateo County District Attorney and the Justice System of this country." *Id.*

Plaintiff also complains that jail officials restricted his access to MCF's law library. *Id.* at 25. Plaintiff apparently chose to represent himself in his criminal proceeding and made numerous requests to use the law library. *Id.* While he was admitted for an "orientation session" he was subsequently denied "all access to the library" for eight months. *Id.* at 25-26. Plaintiff claims that due to this disregard of "rights to access to the courts and effective assistance of counsel," he was forced to waive his right to a speedy trial. *Id.* at 26. Plaintiff eventually made research requests through a library service called the "Leagle [sic] Research Associates" ("LRA"), but alleges that the service was "untimely," and omitted half of his requests. *Id.* at 27-28. Plaintiff claims that his inability to access the law library prevented him from filing a personal injury claim. *Id.* at 29. Plaintiff also complains that the library service did not provide photocopies of legal documents and thus restricted his ability to file documents or claims. *Id.* at 30.

Plaintiff further alleges that he was placed in MCF's "C-side" disciplinary housing unit on three separate occasions. *Id.* at 31-32. The first stay on April 2, 2014 lasted three days, the second on April 18, 2014 lasted fourteen days, and the third on September 12, 2014 lasted thirty days. *Id.* In "C-side," Plaintiff claims his personal property was removed, he was not allowed reading material, and he was not permitted to exercise outside of his cell. *Id.* at 31. He alleges that he

4

"received 30 minutes out of his cell per week in the form of three '10 minute showers.'" *Id.* Plaintiff claims that the lack of physical stimulation has made him lethargic and causes "tremendous pain in [his] shoulders, back, and neck." *Id.* at 32.   Plaintiff claims that he requested to spend more time in MCF's "outside area," but MCF staff refused. *Id.* at 33.  Plaintiff also alleges that he was not allowed to order commissary or to have access to cleaning supplies while in "C-side." *Id.* at 31.

Finally, Plaintiff complains that the jail officials at MCF restrict the distribution of jail grievance forms by "refus[ing] to hand out more than 1 grievance at a time." *Id.* at 6-8.  Plaintiff alleges that jail officials "investigate the reason for the grievance and make judgment on its validity" to determine if a form will be provided. *Id.* at 6-7.  Plaintiff views this policy as "granting unqualified staff wide discretion as to an inmate's ability to grieve the conditions of his confinement." *Id.* at 6.  Plaintiff also contends that jail officials often refuse to sign or file grievances, including Defendants Echano and Alonso who destroyed Plaintiff's grievance. *Id.* at 8, 16.

Plaintiff seeks declaratory relief and monetary damages for the claims in his amended complaint. *Id.* at 41.  He also seeks injunctive relief in the form of "physical access to a law library." *Id.*

## DISCUSSION

### I.   INJUNCTIVE RELIEF CLAIMS

As mentioned above, Plaintiff seeks declaratory and injunctive relief as well as monetary damages.  The jurisdiction of the federal courts depends on the existence of a "case or controversy" under Article III of the Constitution. *PUC v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996).  A claim is considered moot if it has lost its character as a present, live controversy, and if no effective relief can be granted: "Where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented." *Flast v. Cohen*, 392 U.S. 83, 95 (1968).  Where injunctive relief is involved, questions of mootness are determined in light of the present circumstances. *See Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996).

When an inmate has been transferred to another prison and no reasonable expectation or demonstrated probability exists that he will again be subjected to the prison or jail conditions from which he seeks injunctive relief, the claim for injunctive relief should be dismissed as moot. *See Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995). A claim that the inmate might be re-transferred to the prison or jail where the injury occurred is too speculative to overcome mootness. *Id.*

When Plaintiff filed the instant action, he was still incarcerated at MCF. Plaintiff sought injunctive relief to remedy his alleged injuries stemming from various constitutional violations at MCF. However, the record now shows that he has since been transferred to California State Prison - Solano. Because Plaintiff is no longer incarcerated at MCF, his claims for injunctive relief based on his confinement at MCF are DISMISSED as moot. The Court proceeds to review Plaintiff's remaining claims for declaratory relief and monetary damages.

## II.   REMAINING CLAIMS

### A.   Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements, namely that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### B.   LEGAL CLAIMS

Plaintiff brings six claims in his amended complaint:

United States District Court
Northern District of California

6

(1)      A violation of his Fourteenth Amendment due process rights for Defendants' use of excessive force against Plaintiff when he was restrained and assaulted in a holding cell awaiting a court hearing on February 7, 2014, Dkt. 6 at 9-15, 34;

(2)      A violation of his Fourteenth Amendment due process rights for the use of excessive force against Plaintiff when Defendants assaulted him in his cell on March 15 and 16, 2014, *id.* at 16-24, 35;

(3)      A violation of his Sixth Amendment right to effective assistance of counsel when Plaintiff, who represented himself, was denied access to the law library, received an inadequate substitute for physical library access, and was unable to photocopy his legal documents, *id.* at 25-30, 36;

(4)      A violation of his First Amendment right to access the courts by restricting Plaintiff's law library access, substituting physical access to the law library with an inadequate substitution, and not providing means to photocopy documents, *id.* at 25-30, 37-38;

(5)      A violation of his Fourteenth Amendment due process rights for illegally punishing Plaintiff by placing him in a restricted housing unit on three separate occasions and refusing to let him exercise,  *id.* at 31-33, 39; and

(6)      A violation of his First Amendment rights because MCF staff limited the distribution and filing of jail grievance forms at their own discretion, *id.* at 6-8, 40, and because Defendants Alonso and Echano destroyed Plaintiff's grievance relating to the February 7, 2014 incident, *id.* at 16.

### 1. Due Process Claims

#### a.      Excessive Force - Claims (1) and (2)

When a pretrial detainee challenges conditions of his confinement, the proper inquiry is whether the conditions amount to punishment in violation of the Due Process Clause of the Fourteenth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).  The Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. *See Graham v. Conner*, 490 U.S. 386, 395 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)); *see also Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1197 (9th Cir. 2002).  The Ninth Circuit has stated the factors a court should consider in resolving a due process claim alleging excessive force.  *White v. Roper*, 901 F.2d 1501, 1507 (9th Cir. 1990). These factors are (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline.  *Id.*  Furthermore, a jail official's failure to

7

1    intervene to prevent a constitutional violation may be basis for liability.  *See, e.g., Robins v.*

2    *Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison official's failure to intervene to prevent

3    Eighth Amendment violation may be basis for Eighth Amendment liability).

4           Plaintiff alleges that on February 7, 2014, he was subjected to excessive force by

5    Defendants J. Moody, Platt, and Bleaker.  Dkt. 6 at 9-15.  Plaintiff also alleges that during this

6    same incident, Defendant Peardon failed to intervene.  *Id.* at 15.  Liberally construed, Plaintiff's

7    amended complaint states a cognizable Fourteenth Amendment claim of excessive force against

8    Defendants J. Moody, Platt, Bleaker and Peardon.    Additionally, Plaintiff alleges that on March

9    15, 2014, he was again subjected to excessive force by Defendants Echano and Alonso when they

10   "assaulted him without grounds" in his cell.  *Id.* at 16.  Finally, Plaintiff alleges that he was again

11   subjected to excessive force the next day, March 16, 2014, by Defendants Echano, Alonso, and S.

12   Moody when they assaulted him in cell.  *Id.* at 16-19.  Liberally construed, Plaintiff's amended

13   complaint states cognizable Fourteenth Amendment claims of excessive force against Defendants

14   Echano, Alonso, and S. Moody.

15                    **b.    Restricted Housing Placement - Claim (5)**

16          In the state prison context, the Ninth Circuit has held that the hardship associated with

17   administrative segregation, such as loss of recreational and rehabilitative programs or confinement

18   to one's cell for a lengthy period of time, is not so severe as to violate the Due Process Clause

19   itself.  *See Toussaint v. McCarthy*, 801 F.2d 1080, 1091-92 (9th Cir. 1986).  *Toussaint* held that

20   state regulations, on the other hand, create a liberty interest for convicted prisoners in avoiding

21   administrative segregation.  *Toussaint*, 801 F.2d at 1098 (citing Cal. Admin. Code, tit. 15

22   §§ 3335(a), 3339(a)).  Because *Sandin*[5] had not yet been decided, the *Toussaint* court did not

23   address whether this state-created liberty interest in avoiding administrative segregation was one

24   of "real substance."  Before *Sandin*, a state statute or regulation created a procedurally protected

25   liberty interest if it placed substantive limitations on official discretion.  *See, e.g., Kentucky Dep't*

26   *of Corrections v. Thompson*, 490 U.S. 454, 461 (1989); *Olim v. Wakinekona*, 461 U.S. 238, 249

27

28
_____
        [5] *Sandin v. Conner*, 515 U.S. 472 (1995).

United States District Court
Northern District of California

(1983).  *Sandin* held that a protected liberty interest in the prison context also must be one of "real substance."  *See Sandin*, 515 U.S. at 477-87 (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)).

   The regulations reviewed in *Toussaint*, however, govern administrative segregation only in state prisons.  Here, Plaintiff was held in restrictive housing at a county jail (MCF's restricted housing unit known as "C-side"), which is governed by local regulations, policies and procedures.  *See* Cal. Admin. Code, tit. 15, § 1053 (simply requiring local facility administrators to develop written policies and procedures to provide for the administrative segregation of inmates who are determined to be prone to assault staff or inmates or disrupt jail operations, among other concerns).  In order to state a valid procedural due process claim regarding his confinement in administrative segregation following his conviction, Plaintiff must cite local regulations or policies that narrowly restrict jail officials' discretion to place inmates in administrative segregation.   However, even if Plaintiff could make such an allegation in good faith, it appears that he has not made all other allegations necessary to state a cognizable procedural due process claim.  The three brief periods that Plaintiff was held in administrative segregation—for three days, fourteen days, and thirty days—do not amount to an atypical hardship for prisoners serving county jail time.  Therefore, even if he had a state-created liberty interest in avoiding administrative segregation, Plaintiff's allegations do not create a liberty interest that is one of "real substance" implicating his procedural due process rights.  *Cf. Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (despite prior case law determining disciplinary regulations created liberty interest, under *Sandin* no liberty interest when inmate placed in disciplinary segregation for 14 days).  Accordingly, Plaintiff's Fourteenth Amendment claim relating to his three periods of placements at MCF's "C-side" are DISMISSED without prejudice.

### 2.  Sixth Amendment Right to Effective Assistance of Counsel - Claim (3)

   While the Sixth Amendment guarantees a criminal defendant the right to the assistance of counsel, the accused retains the option of forgoing a state-appointed attorney and representing himself.  *Faretta v. California*, 422 U.S. 806, 817 (1975).  Should a defendant opt for self-representation, his due process rights require that he receive a meaningful opportunity to prepare

9

his defense, which at a minimum, includes "time to prepare and some access to materials and witnesses." *Milton v. Morris,* 767 F.2d 1443, 1446 (9th Cir. 1985) (citing *Faretta*, 422 U.S. at 818).  According to the Supreme Court, however, the "federal appellate courts have split on whether *Faretta* implies a right of the *pro se* defendant to have access to a law library." *Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005).

In the Ninth Circuit, constitutionally acceptable means of access include provision of an adequate law library or a professional or quasi-professional legal services plan. *Storseth v. Spellman*, 654 F.2d 1349, 1352 (9th Cir. 1981) (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977)).  But a self-represented criminal defendant "does not have a due process right of access to a court maintained library, so long as he is afforded some alternative means for assistance in the preparation of his defense." *Milton*, F.2d at 1447 (citing *United States v. Lane,* 718 F.2d 226 (7th Cir.1983); *United States v. Garza,* 664 F.2d 135, 142 (7th Cir.1981), *cert. denied,* 455 U.S. 993 (1982)).  Still, denying access to both a law library and legal assistance may violate his Sixth Amendment right to prepare a defense under *Faretta*.  *See Milton*, 767 F.2d at 1445-47; *see also Taylor v. List*, 880 F.2d 1040, 1047 & n.4 (9th Cir. 1989) (issue of applicability of *Bounds* to criminal defendant unresolved, but Sixth Amendment claim may be stated under section 1983 where right to self-representation recognized in *Faretta* is denied by lack of access to law books, witnesses and other tools necessary to prepare defense).  In particular, when a self-represented defendant has no means to prepare a defense, i.e., when he is denied communication with the outside world, he is denied due process.  *Milton*, 767 F.2d at 1447.

Here, Plaintiff asserts that the San Mateo County Sherriff's Department violated his Sixth Amendment right to effective assistance of counsel by denying him access to the law library.  Dkt. 6 at 25-30, 36.  While Plaintiff concedes that he used LRA, a library research service, he questions the adequacy of this alternative means of access.  *Id.* at 27-30.  Plaintiff also alleges that San Mateo County Sheriff's Department adversely affected his ability to represent himself by not providing a means of photocopying documents.  *Id.* at 37.  Liberally construed, Plaintiff raises a cognizable claim against the San Mateo County Sheriff's Department for violating his Sixth Amendment right to prepare an adequate defense under *Faretta*.

### 3.   First Amendment Rights

#### a.   Access to the Courts - Claim (4)

Prisoners have a constitutional right of access to the courts.  *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds*, 430 U.S. at 821.  To establish a violation of the right of access to the courts, a prisoner must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury.  *See Lewis*, 518 U.S. at 350-55.  To prove an actual injury, the prisoner must show that the inadequacy in the prison's program hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement.  *See id.* at 354-55.

Prisoners may not be barred from receiving legal assistance from other prisoners unless they are provided with a reasonable alternative to such assistance.  *See Johnson v. Avery*, 393 U.S. 483, 490 (1969); *Storseth*, 654 F.2d at 1352.  The state may, however, reasonably regulate the time when, and the place where, prisoner legal assistance is dispensed.  *See Johnson*, 393 U.S. at 490; *see Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984) (requiring that prisoners meet with jailhouse lawyer in law library), *cert. denied*, 469 U.S. 845 (1984).  But the restrictions must be "reasonably related to legitimate penological interests" and may not be imposed arbitrarily or without reason.  *Turner v. Safley*, 482 U.S. 78, 89 (1987); *See Bradley v. Hall*, 64 F.3d 1276, 1281-82 (9th Cir. 1995) (abrogated on other grounds by *Shaw v. Murphy*, 532 U.S. 223 (2001)).

Once a Plaintiff identifies the inadequacy of a legal access program, he or she must demonstrate that the alleged shortcomings in the program hindered his efforts to pursue a legal claim.  *See Lewis*, 518 U.S. at 351.  Examples of impermissible hindrances include: a prisoner whose complaint was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known; and a prisoner who had "suffered arguably actionable harm" that he wished to bring to the attention of the court, but was so stymied by the inadequacies of the library that he was unable even to file a complaint. *See id.*  Mere delay in filing papers would not be enough, for example, if they were nevertheless timely filed or accepted and considered by the court.  *See Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir. 1982).  However, the arbitrary denial by prison officials of access to materials the prison routinely made available to inmates for the preparation of legal documents violates an inmate's

United States District Court
Northern District of California

11

1    right of access to the courts when it results in the loss of a legal claim.  *Phillips v. Hust*, 477 F.3d

2    1070, 1073 (9th Cir. 2007).

3           Here, Plaintiff states a constitutional claim for denial of access to the courts by alleging

4    that the San Mateo County Sheriff's Department denied him access to a satisfactory legal

5    assistance program.  *See Johnson*, 393 U.S. at 490; *Storseth*, 654 F.2d at 1352.  Plaintiff has

6    further alleged that he suffered an actual injury based on this lack of access to the courts—he

7    claims that he was forced to waive his right to a speedy trial, and he was prevented from filing a

8    personal injury claim.  Dkt. 6 at 26, 29.  Plaintiff therefore states a cognizable claim for a violation

9    of his right of access to the courts.

10          Plaintiff also alleges that MCF's library research service did not allow him to make

11   photocopies of his legal documents.  Dkt. 6 at 30.  Prisoners have a right to photocopying "when,

12   and only when, necessary to guarantee [] meaningful access to the courts."  *Hiser v. Franklin*, 94

13   F.3d 1287, 1294 (9th Cir. 1996).  A prisoner must establish that the alleged shortcomings in the

14   prison's photocopying policy have hindered, or presently are hindering, his efforts to pursue a

15   nonfrivolous legal claim.  *See id.*; *see also Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996),

16   *amended*, 135 F.3d 1318 (9th Cir. 1998) (denial of photocopying amounts to violation of

17   prisoner's right of access to courts only if prisoner shows that he suffered actual injury as result);

18   *Johnson v. Moore*, 948 F.2d 517, 521 (9th Cir. 1991) (upholding dismissal where prisoner unable

19   to substantiate that alleged dismissal of appeal for untimeliness caused by denial of

20   photocopying).  Plaintiff asserts that he "has been unable to file any documents or claims because

21   of his inability to make photocopies and service the necessary respondents."  Dkt. 6 at 30.

22   Liberally construed, the Court finds that Plaintiff thus raises a cognizable claim against the San

23   Mateo County Sheriff's Department for denial of access to the courts based on his inability to

24   make photocopies in MCF custody.

25                   **b.  Retaliation and Access to Grievance Procedures - Claim (6)**

26          While an inmate's right to meaningful access to the courts extends to *established* grievance

27   procedures, *Bradley*, 64 F.3d at 1279, inmates have no constitutional right to a *specific* grievance

28   procedure, *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d

United States District Court
Northern District of California

639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Nevertheless, once prison authorities establish a grievance procedure, inmates may not be

retaliated against for using an available appeal procedure or for the content of their grievances.

*Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003); *Bradley*, 64 F.3d at 1281.  Such retaliation

creates a "chilling effect" on First Amendment rights.  *Bruce*, 351 F.3d at 1288 (citing *Hines v.*

*Gomez*, 108 F.3d 265, 269 (9th Cir. 1997)).  Fear of punishment or discipline should not dissuade

a prisoner from filing a grievance, as such a constraint violates the First Amendment right of

access to the courts.  *Bradley*, 64 F.3d at 1279.

Plaintiff complains that MCF staff judge the validity of a potential grievance before

providing a grievance form. Dkt. 6 at 6-8.  Plaintiff also alleges that Defendants Alonso and

Echano destroyed his grievance relating to the excessive force incident on February 7, 2014. *Id.* at

16.  Plaintiff claims these Defendants also assaulted him and denied him breakfast for attempting

to file a grievance. *Id.*  While it is not entirely clear if Plaintiff alleges that MCF's grievance form

policy constitutes retaliation, the Court recognizes that MCF staff took adverse action against

Plaintiff based on the content of an appeal.  Because this conduct appears to conflict with the

holding in *Bradley* that protects Plaintiff from retaliation based on the content of an appeal, the

Court finds that Plaintiff raises a cognizable First Amendment claim against the San Mateo

County Sheriff's Department.  Plaintiff has also stated a cognizable First Amendment claim

against Defendants Alonso and Echano for destroying Plaintiff's grievance and retaliating against

him for filing such a grievance.

### 4.  Supervisory Liability Claim

Plaintiff sues Defendant San Mateo County Sheriff Greg Munks in his supervisory

capacity.  Plaintiff does not allege facts demonstrating that Defendant Munks violated his federal

rights, but seems to claim Defendant Munks is liable based on the conduct of his subordinates, the

named Defendants in this action.  There is, however, no respondeat superior liability under section

1983 solely because a defendant is responsible for the actions or omissions of another.  *See Taylor*

*v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  A supervisor generally "is only liable for

constitutional violations of his subordinates if the supervisor participated in or directed the

13

violations, or knew of the violations and failed to act to prevent them." *Id.* A supervisor may also be held liable if he or she implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). Plaintiff's claim against Defendant Munks is therefore DISMISSED without prejudice.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.     Plaintiff's claims for injunctive relief based on his confinement at MCF are DISMISSED as moot.

2.     Plaintiff states a cognizable Fourteenth Amendment claim of excessive force against Defendants J. Moody, Platt, Bleaker and Peardon stemming from the February 7, 2014 incident.

3.     Plaintiff states a cognizable Fourteenth Amendment claim of excessive force against Defendants Echano and Alonso stemming from the March 15, 2014 incident.

4.     Plaintiff states a cognizable Fourteenth Amendment claim of excessive force against Defendants Echano, Alonso, and S. Moody stemming from the March 16, 2014 incident.

5.     Plaintiff's Fourteenth Amendment claim relating to his periods of placements at "C-side" at MCF are DISMISSED without prejudice.

6.     Plaintiff states a cognizable claim against Defendant San Mateo County Sheriff's Department for violating his Sixth Amendment right to prepare an adequate defense under *Faretta*.

7.     Plaintiff states a cognizable First Amendment claim against Defendant San Mateo County Sheriff's Department for denial of access to the courts based on an alleged unsatisfactory legal assistance program and an inability to make photocopies while in MCF custody. Plaintiff also states a cognizable First Amendment claim against the San Mateo County Sheriff's Department based on its limited grievance procedure and against Defendants Alonso and Echano for destroying Plaintiff's grievance and retaliating against him for filing such a grievance.

8.     Plaintiff's supervisory liability claim against Defendant Munks is DISMISSED

without prejudice.

9.      The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the amended complaint and all attachments thereto (dkt. 6) and a copy of this Order to the following Defendants: **San Mateo County Sheriff's Department, Deputies John Moody, Stephen Platt, and Stacy Moody; Sergeant Peardon; and Correctional Officers Bleaker, Calvin Echano, and Adrian Alonso.** The Clerk shall also mail a copy of the amended complaint and a copy of this Order to the San Mateo County Counsel's Office.  Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

10.      Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and amended complaint.  Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, Defendants will be required to bear the cost of such service unless good cause be shown for the failure to sign and return the waiver form.  If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before **sixty (60) days** from the date on which the request for waiver was sent.  (This allows a longer time to respond than would be required if formal service of summons is necessary.)  Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons.  If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due **sixty (60) days** from the date on which the request for waiver was sent or **twenty (20) days** from the date the waiver form is filed, whichever is later.

11.      Defendants shall answer the amended complaint in accordance with the Federal Rules of Civil Procedure.  The following briefing schedule shall govern dispositive motions in this action:

a.      No later than **sixty (60) days** from the date their answer is due, Defendants

1    shall file a motion for summary judgment or other dispositive motion.  The motion must be

2    supported by adequate factual documentation, must conform in all respects to Federal Rule of

3    Civil Procedure 56, and must include as exhibits all records and incident reports stemming from

4    the events at issue.  A motion for summary judgment also must be accompanied by a *Rand*[6] notice

5    so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to

6    oppose the motion.  *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out

7    in *Rand* must be served concurrently with motion for summary judgment).  A motion to dismiss

8    for failure to exhaust available administrative remedies must be accompanied by a similar notice.

9    However, the Court notes that under the new law of the circuit, in the rare event that a failure to

10   exhaust is clear on the face of the amended complaint, Defendants may move for dismissal under

11   Rule 12(b)(6) as opposed to the previous practice of moving under an unenumerated Rule 12(b)

12   motion.  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (overruling *Wyatt v. Terhune*, 315

13   F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative

14   remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), should be raised by a

15   defendant as an unenumerated Rule 12(b) motion).  Otherwise if a failure to exhaust is not clear on

16   the face of the amended complaint, Defendants must produce evidence proving failure to exhaust

17   in a motion for summary judgment under Rule 56.  *Id.*  If undisputed evidence viewed in the light

18   most favorable to Plaintiff shows a failure to exhaust, Defendants are entitled to summary

19   judgment under Rule 56.  *Id.*  But if material facts are disputed, summary judgment should be

20   denied and the district judge rather than a jury should determine the facts in a preliminary

21   proceeding.  *Id.* at 1168.

22          If Defendants are of the opinion that this case cannot be resolved by summary judgment,

23   Defendants shall so inform the Court prior to the date the summary judgment motion is due.  All

24   papers filed with the Court shall be promptly served on Plaintiff.

25                  b.      Plaintiff's opposition to the dispositive motion shall be filed with the Court

26   and served on Defendants no later than **twenty-eight (28) days** after the date on which

27

28
_____
        [6] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

16

United States District Court
Northern District of California

1   Defendants' motion is filed.

2           c.      Plaintiff is advised that a motion for summary judgment under Rule 56 of

3   the Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you

4   must do in order to oppose a motion for summary judgment.  Generally, summary judgment must

5   be granted when there is no genuine issue of material fact—that is, if there is no real dispute about

6   any fact that would affect the result of your case, the party who asked for summary judgment is

7   entitled to judgment as a matter of law, which will end your case.  When a party you are suing

8   makes a motion for summary judgment that is properly supported by declarations (or other sworn

9   testimony), you cannot simply rely on what your amended complaint says.  Instead, you must set

10  out specific facts in declarations, depositions, answers to interrogatories, or authenticated

11  documents, as provided in Rule 56(c), that contradicts the facts shown in the defendant's

12  declarations and documents and show that there is a genuine issue of material fact for trial.  If you

13  do not submit your own evidence in opposition, summary judgment, if appropriate, may be

14  entered against you.  If summary judgment is granted, your case will be dismissed and there will

15  be no trial.  *Rand*, 154 F.3d at 962-63.

16          Plaintiff also is advised that—in the rare event that Defendants argue that the failure to

17  exhaust is clear on the face of the amended complaint—a motion to dismiss for failure to exhaust

18  available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit

19  without prejudice.  To avoid dismissal, you have the right to present any evidence to show that

20  you did exhaust your available administrative remedies before coming to federal court.  Such

21  evidence may include: (1) declarations, which are statements signed under penalty of perjury by

22  you or others who have personal knowledge of relevant matters; (2) authenticated documents—

23  documents accompanied by a declaration showing where they came from and why they are

24  authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements

25  in your amended complaint insofar as they were made under penalty of perjury and they show that

26  you have personal knowledge of the matters state therein.  As mentioned above, in considering a

27  motion to dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary

28  judgment motion under Rule 56, the district judge may hold a preliminary proceeding and decide

United States District Court
Northern District of California

17

United States District Court
Northern District of California

1  disputed issues of fact with regard to this portion of the case. *Albino*, 747 F.3d at 1168.

2  (The notices above do not excuse Defendants' obligation to serve similar notices again

3  concurrently with motions to dismiss for failure to exhaust available administrative remedies and

4  motions for summary judgment. *Woods*, 684 F.3d at 935.)

5  d. Defendants shall file a reply brief no later than **fourteen (14) days** after the

6  date Plaintiff's opposition is filed.

7  e. The motion shall be deemed submitted as of the date the reply brief is due.

8  No hearing will be held on the motion unless the Court so orders at a later date.

9  12. Discovery may be taken in this action in accordance with the Federal Rules of Civil

10  Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to

11  depose Plaintiff and any other necessary witnesses confined in prison.

12  13. All communications by Plaintiff with the Court must be served on Defendants or

13  Defendants' counsel, once counsel has been designated, by mailing a true copy of the document to

14  them.

15  14. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court

16  informed of any change of address and must comply with the Court's orders in a timely fashion.

17  Pursuant to Northern District Local Rule 3-11 a party proceeding *pro se* whose address changes

18  while an action is pending must promptly file a notice of change of address specifying the new

19  address. *See* L.R. 3-11(a). The Court may dismiss without prejudice a complaint when: (1) mail

20  directed to the *pro se* party by the Court has been returned to the Court as not deliverable, and

21  (2) the Court fails to receive within sixty days of this return a written communication from the *pro*

22  *se* party indicating a current address. *See* L.R. 3-11(b).

23  15. Extensions of time are not favored, though reasonable extensions will be granted.

24  Any motion for an extension of time must be filed no later than **fourteen (14) days** prior to the

25  deadline sought to be extended.

26  IT IS SO ORDERED.

27  Dated: November 18, 2015

YVONNE GONZALEZ ROGERS
United States District Judge

28

18